# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### ON APPEAL FROM THE COURT OF CHANCERY.

MARCH TERM, 1864.

EMILE C. BERCKMANS, appellant, and SARA E. BERCKMANS, respondent.

Upon a bill for divorce on the ground of adultery, the complainant must not only show a decided preponderance of evidence in support of the charge, but must prove it to the satisfaction of the court, beyond a reasonable doubt.

This case came before the court upon an appeal from a decree, made in accordance with an opinion of the Chancellor, reported in 1 *C. E. Green* 122.

*Mr. Williamson*, *Mr. Zabriskie*, and *Mr. Frelinghuysen*, Attorney General, for appellant.

*Mr. Titsworth* and *Mr. C. Parker*, for respondent.

The opinion of the court was delivered by

VAN DYKE, J.    The issue presented in this case is neither a novel, nor a complicated one.    It is confined to a single point.    It is a single fact, clearly and explicitly alleged on the one side, and as positively and explicitly denied on the other. The complainant asks a divorce from his wife, and gives for it the single reason that she has been guilty of adultery with Dr. Titsworth.    This allegation of adultery, as we have seen, is positively denied, and whether the charge thus made be true or not, is the question for us to determine, and although the evidence is quite voluminous, and seems to touch on many subjects, yet it must all bear upon and tend to elucidate the issue thus formed, or it has no proper place in the matter before us.

The charge made by the complainant, if true, is known to our law as a crime; consequently this prosecution partakes strongly of the nature of a criminal proceeding, so much so as to place the complainant under the necessity, not only of placing a decided preponderance of testimony in favor of the charge, but of *proving* it to the satisfaction of this court, beyond a reasonable doubt. I do not mean to say that it must be done by such an amount of overwhelming and unmistakable evidence as to render it impossible to be otherwise, but the evidence must be such as to satisfy the human mind, and leave the careful and guarded judgment of the court, free from any conscientious and perplexing doubts as to whether the charge be proved or not.    If, after a careful examination of all the competent testimony, such doubts remain immovable, it is clearly our duty to give the defendant the benefit of such doubts, and to refuse the prayer of the complainant.

The evidence presents the aspect of being both positive and circumstantial.    That which may be termed positive is brief, but very direct.    It is confined to what may be termed the parlor scene, and the bed-room scene, and if the evidence of Mrs. Maria Eliza Berckmans, the witness who describes these scenes, as given in her examination in chief, is to be taken as exactly true, then we are under the legal ne-

cessity of decreeing in favor of this complainant, for if the matters and things there described by her are conceded to be true, we are bound to consider the charge as proved beyond all reasonable doubt. But this testimony of Mrs. Berckmans is seriously affected by two considerations. First, her testimony is in favor of the complainant, and it stands, so far as these scenes are concerned, alone and uncorroborated, while she is expressly and positively contradicted, with regard to each of them, by two witnesses, Sara Berckmans and Dr. Titsworth. These two witnesses may be untruthful as to what they say, but they cannot be mistaken about it. They certainly do know whether the scenes described are true or not. Mrs. Berckmans, the elder, may be untruthful, and she may also be mistaken. If the evidence of the three be entitled to an equal amount of credit and confidence, then the evidence of the defence has entirely overthrown, by its positiveness and preponderance, that of the complainant. It is true that these witnesses on the part of the defence, have a strong inducement to swear as they do, but is not this also true with regard to Mrs. Berckmans? We have no rule by which to determine what motive or consideration will most certainly induce a person to perjure him or herself. One might be tempted to do it for a mere money consideration; another, who could not be purchased by money, might do it to save his name and reputation from the charge of dishonor or crime; and another, who might care but little for either of these, might do it to gratify a most malignant and insatiable feeling of revenge, or of implacable and unrelenting hate, and I do not see but what either of these motives might be as effectual in inducing a witness to depart from the truth as any of the others, and judging from all the developments and manifestations to be found in the evidence in the case, I hardly feel at liberty to say that the defendant and Dr. Titsworth had stronger inducements to depart from the truth than Mrs. Berckmans herself. And, entirely aside from this controversy and every thing connected with it, I do not

know but what their characters for truth and veracity are as good as hers.

Nor can I admit that the mere charge of crime is so far to destroy the credit and character of a person, as that he is not entitled to credit when speaking under oath. Such a principle might ruin the most exemplary of the earth. Surely if the charge is not true, it ought not to discredit the party, and to permit it to do so is to assume that the charge is true, which we cannot do, that being the very thing in dispute.

I think, therefore, that this direct and positive testimony of Mrs. Berckmans, if not entirely overthrown by a preponderance of conflicting testimony, is so much shaken and thrown in doubt, as to be wholly unreliable in so grave a matter.

There is still another difficulty with the evidence of Mrs. Berckmans. What seemed so direct and definite in her examination in chief, so far as the parlor scence is concerned, is by her cross-examination reduced to the greatest doubt and uncertainty. She does not pretend to have seen the defendant at all on the sofa; she saw only a part of her dress; but whether the defendant was in the dress, or in the room at all, or whether one of her dresses happened to be lying on the sofa, or over one corner of it, does not appear; nor does she claim to have recognized Dr. Titsworth at all, or the garments or form of any person, either male or female, but only his boots, his feet, as she says, lying on the sofa, but whether the feet were male or female feet, or whether the boots, if such they were, were on the feet of any one, or lying loose on the sofa, if there at all, all these things are rendered more than doubtful. She does not seem to have seen the doctor go away, and had no knowledge of his being there at the time, except that she saw him come there some hours before. If we add to this sofa occurrence the evidence of others, it is rendered still more doubtful whether she could by possibility have seen anything on the sofa at all.

The whole of the evidence then, which relates to these two principal transactions, having become so reduced, contra-

dicted, and rendered improbable and unreliable, it becomes proper to inquire whether there is any thing in the circumstantial evidence in the case which is sufficient, in itself, or so corroborative of what is considered the direct evidence, as to justify us in sustaining this complaint. Looking at these circumstances as they are detailed by the complainant's witnesses alone, I should be strongly inclined to think, that if the things said to have been done by Dr. Titsworth, had been done by almost any stranger, not a physician, they would be inconsistent with innocence, but being the acts of a family physician, who had long been in the habit of visiting these people in a professional capacity, in connection with the explanations which have been given of them by those who had the best opportunities of knowing, I cannot say that they are inconsistent with perfect purity of intention. I cannot say, of course, that they were not so in point of fact, but the evidence, taken altogether, is very far from convincing me that they were so.

One class of these circumstances relates to the frequency and length of the doctor's visits. Whether these visits were too frequent or not, could only be known with any certainty by the family itself, and its immediate friends. The husband and the wife, the mother of the husband, while there, and the mother of the wife, as well as the physician, had very good opportunities of judging. The husband has not said they were either too frequent or too long. The mother of the husband has been examined, and has expressed her strong dislike to the doctor's visits, whether long or short, whether frequent or otherwise. With her suspicions awakened, as she says they were, she was opposed to all his visits, and was not very likely to see much necessity for them, and was very likely to consider them much more frequent, and much more extended than there was any necessity for. The wife and the mother were also examined, as was also the physician; all of these negative the idea that these visits were either unnecessary, or uselessly prolonged. The opinions of all outside

persons must be based mostly on conjecture, and not upon knowledge. The frequency of a physician's visits must depend very much, I imagine, on the timidity, nervousness, and inexperience of those who employ him. Some people send for the doctor at the slightest cause of alarm; others scarcely ever. The length of such visits, I suppose, would depend much on the number of the doctor's patients, and the sluggishness or activity of his habits. Some never, or seldom, sit down; others never want to get up, and can never go any where without staying all day, if any one will keep their company. The complainant, then, making no objection here to these visits, and never having complained of them to any one at home, so far as we know, but remaining on intimate terms with the doctor to the last, although his mother had long before told him enough to arouse his suspicions, taken in connection with all the evidence on the subject, seems to repel the idea that there was anything really amiss in either these visits, or the acts at the store of Mrs. Marsh, or along the streets, which some of the witnesses thought somewhat equivocal.

Another class or set of circumstances relied on by the complainant's counsel to prove the guilt of the defendant, is the supposed indecent examinations and suspicious experiments practiced by the doctor on the defendant. All the evidence on this subject is the evidence of the complainant, drawn, it is true, from the defendant's witness, not as a cross-examination on any subject previously introduced by the defendant, but as new matter. It is, therefore, the complainant's testimony, and he must take it as it is. What constitutes indecency in such matters, at this day, when so many mechanical physicians are to be found, whose attention is mainly confined to the peculiar diseases of females, is more than I can tell. Doubtless most, if not all of these practices, would be considered indecent, except when performed by a regular-bred physician, as a necessary part of the healing art. But it seems to me to be a sufficient answer to all of this, if anything wrong was done, that it was all performed at the express

request of the husband himself, and in his presence, he assisting as well as he could in the operations.

Then too it is said that Doctor Titsworth aided the defendant in her flight from her husband. There does not seem to have been any difficulty in the wife's leaving. This privilege had been offered her before, and no impediment to her doing this would, I suppose, have been offered; but the difficulty arose about the children, and it seems to have been on their account that the doctor interfered, and that a plan of escape for them, rather than for the mother, was suggested by him. His advice was reduced to writing, which he desired should be burned, and reference is made to seeing her again that evening. These things may admit of an interpretation unfavorable to the defendant. They are such as guilty parties might have adopted, but they do not necessarily require such a construction. They are such as almost every man of common humanity and ordinary sympathies would perform for what he deemed a respectable woman, who had, in his opinion, been treated with sufficient severity and wrong to justify her separation from her husband. If the parties were *guilty,* he would be likely to aid her escape, if necessary. If they were entirely *innocent,* there was no one to whom she could have applied for aid with more propriety than to Dr. Titsworth, and none that could have assisted her, under all the circumstances, more properly than he. Few, if any, knew her condition and sufferings, if there were any, better than he, and if he was satisfied of their existence, it is quite natural that he should have been willing to assist her, although he may have been unwilling that his letter to that effect should fall into the hands of the complainant.

This marriage has certainly been an unfortunate one. Great wrongs, or at least great mistakes, have doubtless been committed by some, perhaps all of the persons prominent in the affair, which a little more consideration, and a small amount more of conciliation, might have prevented. But I feel constrained to say that the evidence is not of that

safe, satisfactory, and reliable kind, which is necessary to justify me in condemning this woman to perpetual infamy and disgrace.

I think, therefore, that the decree of the Chancellor should be affirmed.

The decree was affirmed by the following vote:

*For affirmance*—BEASLEY, C. J., CORNELISON, ELMER, FORT, HAINES, KENNEDY, OGDEN, VAN DYKE, VREDENBURGH, WALES. 10.

*For reversal*—NONE.