PHILIP E. BINGENHEIMER, PETITIONER-APPELLANT, v. SELMA J. BINGENHEIMER, DEFENDANT-RESPONDENT.

Argued April 18, 1949—Decided May 23, 1949.

*Mr. Seymour Cantor (Mr. William Cantor,* attorney) argued the cause for the appellant.

*Mr. Irving I. Jacobs* argued the cause for the respondent.

The opinion of the court was delivered by

WACHENFELD, J. This is a divorce case based upon adultery in which a decree was denied by the advisory master below and comes before us on an appeal by the husband. The court expressed concern and doubt as to its decision, having come to an opposite conclusion on first consideration and being dissuaded therefrom after an examination of some recent cases set forth in its memorandum. The facts are not greatly in dispute but the inferences to be drawn therefrom are emphatically denied.

The parties were married on November 25, 1930, and have four children. In 1933 the husband purchased a plot of ground and erected thereon a two-room house, the title of the property being placed in their joint names. In the early part of 1944 the appellant ceased to have any regard for his wife and in September of the same year he finally left her, taking his clothes with him, intending to work in Philadelphia, where he eventually became employed as an electrician in the Navy Yard. The only explanation for his leaving was that he had been riding back and forth the year before and did not want to continue the ordeal through another winter. Otherwise they parted without incident or conversation, with mutual indifference and apparent acquiescence.

His visits to his family thereafter were quite infrequent but when made were congenial and pleasant. Out of his take-home pay of $69 per week he contributed to his wife for the support of the whole family $25 a week and also paid the electric bills and heating costs. The wife found the financial going difficult and with the aid of the children served newspapers for additional income and finally decided to take in a boarder to help meet the household expenses.

The co-respondent, Mark Higbee, was recommended to her by friends and in November, 1945, became a boarder at the respondent's home, paying $12 a week. Higbee and the two boys slept upstairs and the respondent and the two girls slept downstairs. He ate his meals with the family and was admittedly attentive to Mrs. Bingenheimer, taking her to P.T.A., club and political meetings and to the movies with the children. Although it is denied, the children testified he drank with Mrs. Bingenheimer sometimes to excess, with uncomfortable and distressing results.

The husband's suspicions were aroused and on the night of May 16, 1946, he, together with two witnesses, descended upon the household. The wife was found in her own bedroom dressed in a nightgown and Higbee was reclining in her bed in his underwear, his clothes being in the same room. He says he was asleep and nothing improper happened. The explanation was that he had been taken sick and the sugges-

tion had been made that he use the respondent's bedroom because of its proximity to the bathroom. They were both taken into custody and a complaint was made but no further proceedings resulted.

On May 27, 1946, the appellant filed a petition charging his wife with adultery and on July 20, 1946, at two A. M., another raid on the household was made. The respondent was found in bed in her own room but the appellant and his witnesses saw Higbee coming from her room as they arrived, dressed only in his trousers and shirt. This time the wife says she was asleep, while the boarder admitted he was awake, but both denied wrongdoing.

The thirteen-year-old son, Philip, says he saw the parties occupy the same bed on occasions and the substance of this testimony is repeated by a daughter fifteen years of age.

The doctrine of opportunity and desire is relied upon by the appellant. *Berckmans v. Berckmans,* 16 *N. J. Eq.* 122 (*Ch.* 1863); affirmed, 17 *N. J. Eq.* 453 (*E. & A.* 1864); *Benjamin v. Benjamin,* 111 *N. J. Eq.* 400 (*E. & A.* 1932); *Tanis v. Tanis,* 112 *N. J. Eq.* 227 (*E. & A.* 1933).

■ The facts indicate quite conclusively desire and unlimited opportunity. The way and manner in which the boarder occupied and lived in the respondent's home was engrossing and informative. The testimony of the youngsters, although damaging to the extreme, must be received with a great deal of caution because of their age and evident fondness for their father in preference to the mother. Nevertheless it is not disputed that Higbee was a boarder from November, 1945, until July, 1946, some eight months, and that his association with the respondent was close and continuous. Under these circumstances it is significant indeed that on the two occasions raids were made both parties were found in the same room at the same time in the dead of night under different circumstances and with different explanations requiring both to protest their innocence. The natural conclusion from a reading of the record is almost inescapable and we are satisfied that adultery was committed as alleged in the petition and as abundantly evidenced from the record. The

admitted circumstances were not consistent with the claim of innocence.

Having so decided, it becomes necessary to determine whether the doctrine of unclean hands applies so as to deny the husband the relief to which he would otherwise be entitled.

■■ There is imposed upon the husband the duty to protect his wife and, if he sees acts or conduct on her part which a reasonable man could not see without being convinced that his wife's honor is being placed in jeopardy, he is called upon to exercise vigilance in the care of his wife and, if he makes no effort to avert the natural consequences of her conduct, he will be assumed to have contemplated and acquiesced in the result of such conduct. This is the general rule as stated in many cases. But where, as here, the husband has in no way been responsible for the wife's adultery, he is not guilty of connivance.

■ A husband may properly watch his wife, whom he suspects of adultery, in order to obtain proof of the fact, and such conduct does not constitute connivance or consent on his part in the absence of evidence of encouragement on the part of the husband. A husband's desire to be rid of his wife will not in itself change this rule. *Benjamin v. Benjamin, supra.* Before the husband can be said to connive in his wife's crime, he must have contrived, invited or encouraged her in the conduct complained of. If it was solely the result of the wife's activities, the husband, even though he suspects her of infidelity, may set a watch to obtain the necessary proof. *Dilatush v. Dilatush,* 86 *N. J. Eq.* 346 *(Ch.* 1916).

■ The motive which induces a husband to seek a divorce from an unfaithful wife cannot properly have any material bearing upon his legal right to a divorce if the adultery charged be proved either by direct or circumstantial evidence, and he is legally justified in using any and all lawful means to procure testimony so as to enable him to get rid of a wife who he has reasonable grounds to believe is guilty of infidelity. *Wille v. Wille,* 88 *N. J. Eq.* 581 *(E. & A.* 1918).

■ All of the cases in our courts which have considered this defense of consent or connivance have applied the doctrine

to acts or conduct which were in themselves of such a character as to cause or tend to bring about the crime. *Lehman v. Lehman,* 78 *N. J. Eq.* 316 .(*Ch.* 1911). In the case *sub judice,* the husband had the right to suspect and to watch and he is not to be denied the relief which he seeks as he did not actively participate in any act which contributed to or helped bring about the adultery complained of. The presence of the boarder originated solely in the wife and was not the result of any thought or action on the part of the husband.

The decree below is reversed and the cause remanded for proceedings in accordance with this opinion.

That portion of the decree enjoining and restraining the appellant from interfering with the equal use by the respondent of the lands and premises therein mentioned falls with this opinion as by law they now become tenants in common.

The counsel fee allowed to the solicitor for the wife will stand despite this reversal as she was entitled to be represented by counsel on the charges made against her. There is no merit, however, in the suggestion that this allowance be increased.

*For reversal*—Justices Heher, Wachenfeld, Burling and Ackerson—4.

*For affirmance*—Chief Justice Vanderbilt and Justice Case—2.