8 N.J. Super. 254 (1950)
74 A.2d 325
ERWIN CHARLES GUTZWILLER, JR., PLAINTIFF-RESPONDENT,
v.
EVELYN HUBLITZ GUTZWILLER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 5, 1950.
Decided June 19, 1950.
*255 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Joseph J. Mutnick, attorney for and of counsel with plaintiff-respondent, argued the cause.
Mr. Norman J. Abrams argued the cause for the defendant-appellant (Messrs. Abrams & Stine, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
Defendant, Evelyn Hublitz Gutzwiller, appeals from the judgment nisi entered against her by the Superior Court, Chancery Division, dissolving the marriage between her and the plaintiff on the ground of adultery.
The parties were married on February 12, 1941. Two children born of the marriage are in the custody of the defendant. Plaintiff relies upon the proof of one act of adultery committed by his wife with the corespondent, a medical doctor, on August 17, 1947.
Defendant was an employee in the offices of the corespondent and an associate with whom he shared offices. At approximately *256 ten o'clock on the night in question, after having taken his wife to the hospital, the corespondent visited at the home of the parties. At about midnight, after plaintiff had served a few drinks, all three went out to a diner and returned to the Gutzwiller home for a "night cap." When the corespondent was leaving at about one o'clock, he remarked: "I have no wife tonight. Why don't you come home with me?" Defendant replied: "Why not?" Plaintiff offering no objection, the corespondent and defendant thereupon left the house together in corespondent's car and did not return. Mrs. Gutzwiller and the corespondent testified that during the evening plaintiff told his wife that the trouble with her was that she was under-sexed and it was too bad she didn't find herself a man and learn something. Plaintiff denied the foregoing testimony, stating that he took the suggestion that his wife go home with the corespondent as a joke; that, when she did not return, however, after a lapse of some twenty minutes, he became suspicious, drove over to the corespondent's home, a distance of nine miles, where he found the house in complete darkness and his car parked in the driveway; that, not being certain as to whether his wife was inside, or what was going on, at about 2:00 A.M., plaintiff telephoned a business associate of his, Ernest Busch to meet him; that they then drove to corespondent's home, where he parked his car and kept the house under surveillance until 6:00 A.M., during which time the house remained in total darkness. At about 6:00 A.M., plaintiff and the witness Busch saw a light go on in the corespondent's house and shortly thereafter the defendant and corespondent emerged from the house, got into corespondent's car and drove off to a diner. Plaintiff and Busch followed them, and at the diner, plaintiff introduced the corespondent to both Busch and a policeman for purposes of identification. Plaintiff thereupon proceeded home followed by defendant and corespondent in the latter's car. At the Gutzwiller home the corespondent and the defendant protested their innocence. Following the corespondent's departure, the defendant became hysterical and pleaded for the plaintiff's forgiveness, stating *257 that in return she would thereafter devote herself faithfully to her husband and children. Plaintiff, on the basis of defendant's promises and assurances of her love and affection, and the propriety of her future conduct, condoned the alleged offense. Defendant continued in the employ of the corespondent and openly confessed her love and affection for the corespondent. On October 4, 1947, and again on October 11, 1947, she made unsuccessful attempts to commit suicide, leaving notes asserting her love and affection for the corespondent and that she could not go on without him. Plaintiff testified that three weeks after the alleged act of adultery on August 17, 1947, his wife arbitrarily refused to have further sexual relations with him, informing him that she could not do so because of her love for the corespondent. Mrs. Gutzwiller denied this testimony, stating that their sexual relationship continued as late as November 27, 1947. Plaintiff left his wife and children on December 2, 1947, because, as he testified, she had violated her promises of conjugal kindness after he had forgiven her act of adultery, and by reason of her refusal to have sexual relationship with him and her repeated insistence that she loved the corespondent. Mrs. Gutzwiller and the corespondent testified that by reason of their intoxicated conditions, they had no recollection of what happened from the time they left the Gutzwiller home that night until they awoke at 6:00 A.M. and found themselves occupying the same bed, both dressed rather scantily.
One prior separation had occurred between the parties, on February 12, 1947, when the plaintiff left the defendant and absented himself for three days. Mrs. Gutzwiller states that her husband left her because:
"* * * We never understood each other in our sexual relations, and in February, 1947, my husband and I had one of our frequent arguments because I refused to do some of the things he asked me, and he left the house."
Plaintiff did not refute this testimony nor did he offer any explanation of the circumstances of that separation.
*258 Defendant contends that the trial judge erred in directing the entry of judgment nisi dissolving the marriage, asserting that the proofs clearly indicate that plaintiff was guilty of connivance in the consummation of the act of adultery. The Divorce Act provides that no divorce shall be adjudged on the ground of adultery if it shall appear to the court that the party complaining was consenting thereto. R.S. 2:50-5, as amended by P.L. 1948, c. 320, p. 1285, § 5. If the complaining party by his conduct indicates an intent or willingness that the act of adultery may take place, or is guilty of culpable negligence in not preventing it, it is not necessary to find words or statements of the plaintiff to indicate connivance or consent. Delaney v. Delaney, 71 N.J. Eq. 246 (E. & A. 1906). The latest expression on what constitutes connivance is found in the opinion of Mr. Justice Wachenfeld, speaking for the Supreme Court, in Bingenheimer v. Bingenheimer, 2 N.J. 284 (1949), at p. 289:
"There is imposed upon the husband the duty to protect his wife and, if he sees acts or conduct on her part which a reasonable man could not see without being convinced that his wife's honor is being placed in jeopardy, he is called upon to exercise vigilance in the care of his wife and, if he makes no effort to avert the natural consequences of her conduct, he will be assumed to have contemplated and acquiesced in the result of such conduct. This is the general rule as stated in many cases. * * *"
We are satisfied from an examination of the record that the conduct of the husband clearly spells out connivance on his part in bringing about the commission of the act of adultery. Parenthetically, for the purpose of this appeal, defendant concedes the commission of the adulterous act. Mr. Gutzwiller testified that he considered the incident a joke at the time of the proposal when his wife and the corespondent departed together. Such a state of mind is difficult to grasp. Mr. Gutzwiller cannot be considered as one unfamiliar with the ways of the world. He is thirty-five years of age, holds a responsible position in the business world and had been married for over six years. That he did not contemplate the natural and probable consequences of his wife's conduct taxes one's *259 credulity. His failure to exercise diligence to protect her at the time she and the corespondent left his home, and his subsequent conduct, persuades us that he was not averse to the consummation of an act of adultery and wanted to obtain proof thereof. This conviction is strengthened by the fact that he waited twenty minutes before he drove to the corespondent's home, where he saw the house in darkness and the car parked in the driveway. Instead of taking action to protect his wife, as a normal husband would have done, he sought the aid of a witness who, together with him, sat in Gutzwiller's car for approximately four hours until his wife and the doctor emerged at 6:00 A.M. For later identification purposes, he introduced the corespondent to his witness Busch and a police officer. This conduct does not bespeak the concern of a husband to protect his wife's virtue, but rather consent and acquiescence in the probable consequences that he must have foreseen. Plaintiff contends that his forgiveness of his wife the same morning refutes defendant's contention that his conduct can be stamped as connivance; that, certainly, if he had intended to aid in the consummation of the adulterous act or to consent thereto, he would not have forgiven her so promptly. Regardless of what may have been his motives for condonation, if the act of adultery was committed with plaintiff's consent and acquiescence, plaintiff is precluded from relying on the adulterous act as a ground for divorce.
While not conclusive on the question of connivance, we think some significance may be attached to the fact that plaintiff left his wife earlier in the same year and absented himself from his family for three days, and, that at the trial he made no attempt to refute his wife's asserted reasons for his leaving nor to explain the separation.
We are satisfied that, under the rule of the Bingenheimer case, plaintiff's conduct may be characterized as connivance and he is not entitled to a divorce on that ground.
The judgment for divorce nisi is reversed. The provisions therein for custody of the two children and their support, and allowance of counsel fee and costs to defendant are affirmed.