17 N.J. Super. 433 (1952)
86 A.2d 272
LEONARD EGNOZZI, PLAINTIFF-RESPONDENT,
v.
ANTOINETTE EGNOZZI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1952.
Decided February 6, 1952.
*435 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Leslie H. Cohen argued the cause for appellant (Messrs. Margolis & Margolis, attorneys; Mr. Cohen on the brief).
Mr. William E. Kennedy argued the cause for respondent.
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
This appeal brings up for review a judgment entered in the Chancery Division awarding the plaintiff husband a divorce based on adultery and dismissing the defendant wife's counterclaim based on extreme cruelty.
*436 A child, her first, was born to defendant on September 18, 1949, 16 years after the marriage of the parties. She had a "normal" delivery after a "full time" pregnancy. Her attending physician, asked to give his opinion of the date of the child's conception, testified as her witness that, "calculated on the basis of a general rule for expecting the time of delivery," the calculation was December 11, 1948, but "that is a general rule, not a specific one for a specific patient." A physician who was a witness for the husband agreed that the calculation according to the general rule produced that date.
The husband's case is that the child is not his, but is the child of a paramour of the defendant, not identified. He claims that he is infecund and, in any event, had no marital intercourse after August, 1948, when, he said, he and his wife quarreled and thereafter occupied different rooms in their apartment until November 21, 1948, when he left her. He also testified that "sometime in December" he intercepted a man leaving the apartment and upon demanding an explanation from his wife was told she wanted a divorce to marry the other.
There is no corroboration whatever either of the alleged non-access from August to November 21, or of the alleged December incident. The alleged non-access after November 21 is corroborated, however, by the testimony of plaintiff's mother and brother that after that date he slept every night at his mother's house.
The wife categorically denies any wrongdoing. She testified that after a reconciliation in August following a separation of several months, the marriage was harmonious until she discovered her pregnancy in March, 1949, and the plaintiff claimed that the child was not his; that, notwithstanding this, they did not separate until after the baby's birth. She admitted that after November 21 her husband usually spent the night at his mother's home, but said he did so because defendant worked nights at the time and plaintiff's mother was lonesome after the death of plaintiff's *437 father and wanted company. She said, however, that plaintiff came to the apartment every afternoon after finishing work and stayed until he drove her to her place of work and that he usually spent her nights off with her in the apartment. She insisted that they continued marital intercourse until June, 1949, when she became very ill and plaintiff took her to her sister's house, from which she was hospitalized and to which she returned in the first week of July and where she remained until she went back to the hospital for her confinement. Her brother corroborated her to the extent of testifying that on occasions he stayed overnight in the apartment and that once in December, 1949, the parties occupied the bedroom while he slept in the living room.
When it is sought in any case to support a finding of adultery upon circumstantial evidence, the circumstances must be such as would lead the guarded discretion of a reasonable and just man to that conclusion. Where appearances are capable of two interpretations, equally consistent with probability, the one involving guilt and the other consistent with innocence, the interpretation should be favorable to innocence. Eberhard v. Eberhard, 4 N.J. 535 (1950); Bingenheimer v. Bingenheimer, 2 N.J. 284 (1949); Wagner v. Wagner, 140 N.J. Eq. 213 (E. & A. 1947); Berckmans v. Berckmans, 16 N.J. Eq. 122 (Ch. 1863), affirmed 17 N.J. Eq. 453 (E. & A. 1864); Day v. Day, 4 N.J. Eq. 444 (Ch. 1844). And where the consequence is not only to convict a wife of being an adulteress, but is also to make illegitimate a child born in wedlock, the proof must be such that "there is no possible escape" from the conclusion that the charge made by the husband is true. Wallace v. Wallace, 73 N.J. Eq. 403 (E. & A. 1907); Titus v. Titus, 3 N.J. Misc. 241 (Ch. 1925). An innocent child is not to be branded with the bar sinister unless the record is so far conclusive as to leave room for no other course. 7 Am. Jur., pp. 636 et seq.
We are not persuaded that the proofs either as to alleged infecundity or alleged non-access justify the conclusion that "there is no possible escape" from the finding *438 that they substantiate the charge of adultery leveled by the plaintiff against his wife. The most favorable view that may be taken of the claim of non-access is that there was no access after November 21, 1948; the plaintiff's uncorroborated statement of non-access from August, 1948, to November 21, 1948, is insufficient to overcome the presumption that marital intercourse is practiced between competent spouses living in the same house. Desmidt v. Desmidt, 130 N.J. Eq. 23 (E. & A. 1941). Thus the issue in this regard is narrowed to the question whether the interval of 301 days from November 21, 1948, to September 18, 1949, so far exceeded the normal period of gestation as to make it impossible for plaintiff to be the child's father. That fact as to an interval of such length must be established by competent medical proof and will not be presumed. Such proof is lacking here. It is not to be found in the testimony of the physicians' calculations of the December 11 date  the rule employed by them is a rough approximation merely and was disclaimed as being precise or determinative in a particular case. There are decisions which have held that the adultery of a wife is not proved by evidence of her giving birth to a child after even longer periods since access of her husband. Gaskill v. Gaskill, [1921] P. 425, 21 A.L.R. 1451 (331 days), and cases discussed in Preston-Jones v. Preston-Jones [1951], 1 All E.R. 124 (H.L. 1950). See also Annotations, 7 A.L.R. 329, 21 A.L.R. 1457.
The proofs relied upon by the trial court to support its finding that the plaintiff was infecund and could not possibly have procreated the child are similarly inconclusive. The tests were made September 2, 1949 (two weeks before the birth of the child), July 12, 1950 and August 5, 1950). The evidence is that such negative results are medically explicable either because there is no formation of fecundating fluid or, if formed, that the fluid is blocked in its passage. However, plaintiff's doctor testified that "no other tests were made to determine exactly the cause of this pathology" in plaintiff's case although "the fact * * * would indicate *439 that there was some obstruction"; yet, because the examination was not made he was unable to say how long, if it was a blockage, the same had existed. Plainly, this medical testimony does not support a finding of the existence of the condition on November 21 as more probable than its development after that date. That the marriage has been childless for 15 years does not tip the balance, although both testified they never practiced contraception. The physician admitted that even in that circumstance the birth of a first child after 15 years of marriage is not unknown. When asked whether it was probable that the husband had ever been capable during the marriage of producing pregnancy, the doctor gave the opinion that, in light of the history, he did not "consider that a possibility" but that "it is a rather difficult question to answer," "All I might say was at the times he was examined" he did not have that power.
We therefore conclude that the proof essential to support a finding of adultery upon circumstantial evidence is not to be found in this record and that the judgment upon plaintiff's complaint cannot stand.
We perceive no error, however, in the dismissal of the defendant's counterclaim. The evidence tended to corroborate but one of the acts of cruelty charged; this related to the allegation that plaintiff continuously after March, 1949, made the accusation that the child was not his. But defendant failed to show that this conduct either endangered her life or health or rendered her life of such extreme discomfort and wretchedness as to incapacitate her, physically or mentally, from discharging the marital duties  an essential element of proof upon a complaint for divorce for extreme cruelty. Steinbrugge v. Steinbrugge, 2 N.J. 77 (1949); Pfeiffer v. Pfeiffer, 1 N.J. 55 (1948); Capozzoli v. Capozzoli, 1 N.J. 540 (1949). The courts interfere to prevent future harm rather than to punish the offender for what has already been done. Bonardi v. Bonardi, 113 N.J. Eq. 25 (E. & A. 1933).
*440 A most persuasive circumstance is that according to her she continued freely to bear the sexual relation to plaintiff until her illness in June. That illness is not connected in any wise with the accusations. Her doctor testified it could not be said that the ailment was brought on by the accusations or even by the alleged but uncorroborated assaults; "I don't see how you can prove that," "It is hard to say what it is due to  the cause was never determined."
Moreover, her sister's testimony is that plaintiff visited defendant at her house "every day" after June and that while he consistently brought up the question of the expected child's paternity "then he would feel sorry and make up."
Too, defendant says plaintiff went with her to the obstetrician's office in July. Plaintiff denies this, but the doctor corroborates defendant; indeed, the doctor testified that plaintiff told him on that occasion "to take good care of her and he would pay the bill." And defendant said her husband visited her frequently at the hospital during her confinement, usually after hours. She took the baby to a friend's home upon her release and had the friend call the plaintiff on several occasions to come to see her.
Defendant's behavior in the circumstances clearly leaves no room for an inference that the accusations endangered her life or health or rendered her life of such extreme discomfort and wretchedness as to incapacitate her, physically or mentally, from discharging her marital duties.
The judgment is modified to dismiss plaintiff's complaint and in all other respects is affirmed.