92 N.J. Super. 204 (1966)
222 A.2d 552
IN THE MATTER OF THE ADOPTION OF A CHILD BY K AND WIFE.
Superior Court of New Jersey, Bergen County Court, Probate Division.
Decided July 28, 1966.
*205 Mr. John A. Matthews, Jr., attorney for plaintiffs.
BOTTER, J.S.C. (temporarily assigned).
This matter is before the court on a first and final hearing for the adoption of a child. N.J.S.A. 9:3-23(B); R.R. 4:112-7. The child was placed with plaintiffs by an approved agency to *206 whom the child was surrendered by his mother. The mother, a married woman, was allegedly separated from her husband at the time the child was conceived. She later divorced her husband. In these circumstances, because of the presumed legitimacy of the child, the court has raised the question whether the adoption can be approved without notice to the mother's ex-husband. The hearing was continued so that plaintiffs' attorney could furnish additional information on this issue.
The child's mother and her husband were married in November 1961. A child was born to them one month later. The approved adoption agency reports that the couple separated four times between 1961 and July 1962, when the final separation occurred. In July 1964 the wife started a divorce action, and the judgment nisi was entered in February 1965 on grounds of desertion. The divorce was uncontested. The child sought to be adopted was born on March 25, 1965. Thus, the child was probably conceived before the divorce action was commenced. The child was born one month after the judgment nisi was entered and before the divorce became final.
In these circumstances the law presumes that the child in question is legitimate  that the mother's husband was the father of the child. A child born or conceived prior to the dissolution of the marriage is by common law presumed to be the legitimate offspring of the husband and wife. Wallace v. Wallace, 73 N.J. Eq. 403 (E. & A. 1907); Kowalski v. Wojtkowski, 19 N.J. 247, 263 (1955) (dissenting opinion); In re Rogers, 30 N.J. Super. 479, 485 (App. Div. 1954); In re Strachen's Estate, 167 Kan. 1, 204 P.2d 703 (Sup. Ct. 1949). The presumption of legitimacy may be rebutted by proof of nonaccess. Wallace v. Wallace, and In re Rogers, supra. In fact, when surrendering the child to the adoption agency shortly after his birth the mother stated in writing that her former husband was not the father of the child. However, this untested statement of the mother is not sufficient. The cases hold that the presumption of legitimacy *207 may be overcome only by the clearest proof to the contrary. It has been said that a child will be declared illegitimate only when the proof leaves "no possible escape" from that conclusion. Wallace v. Wallace, supra; Egnozzi v. Egnozzi, 17 N.J. Super. 433, 437 (App. Div. 1952); and see In re Rogers, supra, reviewing the standard of proof required to overcome this presumption.
The agency admits that it did not communicate with the former husband at any time. There is no evidence before this court that the husband knew of the pregnancy and birth of this child. The husband was not given any notice of this proceeding. Thus, as the case stands, the only information before the court to refute the husband's parenthood is the wife's statement to the adoption agency and the divorce decree establishing desertion. On this basis the court cannot conclude that the husband was not the father of the child without at least affording him notice and an opportunity to be heard. While the husband is bound by the divorce decree as it affects the marriage status, the child's interest requires that the divorce decree should not foreclose an inquiry in this proceeding as to the husband's access to the wife at the time of conception. A divorce granted for desertion may imply nonaccess. But the child, who was then unborn and not a party to that proceeding, cannot be bound by that decree. In re Cogan's Estate, 267 Wis. 20, 64 N.W.2d 454 (Sup. Ct. 1954); In re Stroope's Adoption, 232 Cal. App.2d 581, 43 Cal. Rptr. 40 (D. Ct. App. 1965); see also In re Estate of Cunha, Haw. 414 P.2d 925 (Sup. Ct. 1966).
At common law, until the early 18th Century, a child born of a married woman was conclusively presumed legitimate if the husband was within the "four seas" and not impotent. Nicolas, A Treatise on the Law of Adulterine Bastardy, 249 (1836). Over the ages various reasons have been advanced for a conclusive or very strong presumption of legitimacy. Valid or not, the reasons expressed include the protection of innocent children from disinheritance, the promotion of public morals and chastity by encouraging husbands to keep *208 watch over their wives, the avoidance of difficulty in ascertaining paternity, and the avoidance of inquiries into the privacy of domestic life. Ibid., at pp. 2, 25-26, 130, 186-187; LeMarchant, Report of the Proceedings of the House of Lords on the Claims to the Barony of Gardner, at p. 467 (1828). From the child's viewpoint, bastardizing the child not only affects his rights of inheritance but may permanently wound him emotionally. One would expect that a child has a natural yearning to know his true parentage. Every child has the need to feel rooted, to find himself, and to know his true origins. When such knowledge is denied the child may resort to fantasy to fill the void. As the links to his past disappear with time, the search for his identity will become more difficult. The anxiety to learn what was in his past may be pathological, making it more difficult for the child to lead a useful life and to form meaningful relationships. Stone, "Children Without Roots," 27 Social Service Review 144 (June 1953); Brisley, "Parent-Child Relationships in Unmarried Parenthood," Proceedings of the National Conference of Social Work 435 (1939); Donahue, "Children Born out of Wedlock," 151 Annals of the American Academy of Political and Social Science 162 (1930); Lundberg, "Children of Illegitimate Birth and Measures for Their Protection," U.S. Children's Bureau Publication No. 166 (1926). Of course, adoption will help minimize or overcome the adverse effects of illegitimacy. Nevertheless, a child deserves to have notice given to his mother's husband so that the husband may come forward, if he desires, to affirm or deny parentage of the child. I believe that this is in the best interest of the child and furnishes a sufficient basis for the presumption of legitimacy.
In this case the authority of the approved agency to place the child for adoption depends upon a valid surrender of the custody of that child by the parent or parents of the child. N.J.S.A. 9:3-17 et seq.; N.J.S.A. 9:3-19.1 and N.J.S.A. 9:3-23(A) (3). Each natural parent of a legitimate child must surrender custody of the child. N.J.S.A. 9:2-15; N.J.S.A. 9:3-23(A) (3), and see N.J.S.A. 9:3-18(c), *209 (f). If the husband who is presumed to be the father of the child has not surrendered custody to the agency, the agency should seek such surrender or should promptly bring an action to terminate the husband's rights to the child. N.J.S.A. 9:2-18. In this way the issue of paternity may be resolved early in the life of the child. It is advantageous to resolve this issue before the child is placed with prospective adoptive parents.
The foregoing establishes that in this case the former husband of the child's mother must have notice of these proceedings. An agency approved for placing children for adoption should not undertake to determine the legitimacy of a child and the effectiveness of the surrender document on the statement of the mother alone. Here the mother's written statement to the agency advised the agency that the judgment nisi was entered only one month before the child was born. Where the facts evoke the presumption of legitimacy the agency should realize that the mother's surrender of custody is not sufficient.
An order should be presented fixing a new hearing date. The court will require that notice of the hearing be given to the former husband of the child's mother.