134 N.J. Super. 69 (1975)
338 A.2d 227
L., PLAINTIFF,
v.
M., DEFENDANT.
Superior Court of New Jersey, Juvenile and Domestic Relations Court, Camden County.
April 24, 1975.
*70 Mr. Arthur Jay Cohen, of the Camden County Welfare Board, for plaintiff pursuant to R. 1:21-3(c). (Ms. Mary E. Dugdale, Camden County Welfare Board, attorney).
Mr. Lee Sherman for defendant.
DOUGLAS, J.J.D.R.C.
The issue here is whether defendant husband should be required to support a child conceived and born to plaintiff wife after defendant underwent a vasectomy operation.
The parties were married June 28, 1969. Three children were born of the marriage, after which the family doctor advised the wife not to have more children due to medical reasons. The parties agreed that the husband would have a vasectomy by Dr. Yorker on July 28, 1972, the same month in which the third child was born. This was done.
On January 21, 1974 the wife gave birth to the child at issue. The pregnancy was full term, with conception occurring apparently in April 1973. The parties separated in June 1973. The wife testified that the parties occupied separate rooms for three months before the separation, but had sexual relations about once every two weeks during that time, using no birth control methods. The husband testified that they had separate rooms for five to six months prior to the separation and had sexual relations less than every two weeks and none for the two months before the husband left.
*71 There is no testimony or suggestion of any impropriety on the wife's part with any other man, except inferentially by the husband's claim that he cannot be the father of the last child by reason of his operation.
The wife testified that she has had no relations with any man other than her husband; that she is an active and regular church member, and that she has not dated since the separation.
The husband is also a good church member, studying to be a minister. The parties have had sexual relations in 1974 since their separation and after the last child's birth.
Dr. Yorker testified in substance as follows: He tells his patients that success with a vasectomy is better than any other kind of operation; that usually tests are made of the sperm count the second and third month after the operation, and if the count is zero at the second month and two to zero at the third month, the patient is considered sterile; that complete sterility is usually seen in three months; that this defendant had tests in October 1973 and April 1974, with no sperm seen, which means defendant was sterile at the time of the tests; that he has never had a vasectomy with sperm 10 to 11 months after the operation; that the outside limits for the existence of sperm is not much more than six months; that it is medically not probable that defendant is the father of the child conceived 10 to 11 months after the vasectomy; that the probability of sterility at the time of conception is great but is not 100%, and that normal gestation is nine months previous to birth.
Both parties impressed the court as being honest, sincere and straightforward in their testimony.
The legitimacy of every child born in wedlock is now, and since the earliest times has been, bolstered by an exceedingly sturdy presumption, which presumption is recognized in this State. In re Rogers, 30 N.J. Super. 479 (App. Div. 1954). In such circumstances legitimacy, *72 though strongly presumed, may be rebutted. B. v. O., 50 N.J. 93 (1967). At one time the proof to establish illegitimacy of a child born in wedlock had to be such that there was no probable escape from the conclusion. In re Rogers, supra. This test has been modified and the appropriate burden now is "clear and convincing evidence". Sarte v. Pidoto, 129 N.J. Super. 405 (App. Div. 1974).
The reasons for the presumption have been collected in In re Adoption by K., 92 N.J. Super. 204 (Cty. Ct. 1966), as follows:
* * * the protection of innocent children from disinheritance, the promotion of public morals and chastity by encouraging husbands to keep watch over their wives, the avoidance of difficulty in ascertaining paternity, and the avoidance of inquiries into the privacy of domestic life ... From the child's viewpoint, bastardizing the child not only affects his rights of inheritance but may permanently wound him emotionally. One would expect that a child has a natural yearning to know his true parentage. Every child has the need to feel rooted, to find himself, and to know his true origins.
In the present factual context is the claimed illegitimacy of the child established by "clear and convincing evidence"? I conclude that it is not. The medical testimony, while dealing with probabilities, does not close the door. On the medical testimony a doubt remains, and it is the only area of uncertainty in the testimony. Sterility from a vasectomy is not guaranteed but is, at best, merely better than any other form of operation. The usual tests in the second and third month after the operation were not made here. The tests of October 1973 and April 1974 do not establish sterility at the time of conception in 1973. It may be unlikely that sperm existed in the husband nine months after the operation, but it is not impossible. To resolve that doubt in favor of defendant would be to determine that the wife had sexual relations at the time of conception with someone other than her husband, but there is no shred of evidence to support such a holding. To the contrary, the undisputed testimony is that the wife has never *73 had sexual relations with anyone except her husband. There is no proof the wife was even interested in any other man. Although the husband testified that the parties had no relations for two months before he left, this differs from the wife's testimony, and in view of the fact that their relations continued even after the birth of the child whose paternity is at issue and on into 1974, well after the separation, I accept the wife's testimony on this point. I hold that the child is legitimate.
This holding is not inconsistent with decisions from other jurisdictions.
In the Arizona case of Pyeatte v. Pyeatte, 21 Ariz. App. 448, 520 P.2d 542 (1974), the Court of Appeals of that jurisdiction, in deciding a claim of sterility on the part of the husband, held:
The trier of fact is not compelled to believe expert opinion in the face of evidence of practical results indicating otherwise. * * * Here there was evidence of repeated intercourse between plaintiff and defendant during the period of conception and a denial by plaintiff of access to other men during this time. Taken together with the lack of total conclusiveness inherent in a medical determination of sterility, we cannot hold as a matter of law that defendant clearly and convincingly established non-paternity.
In Pyeatte the doctor testified that no one could state as "an absolute fact" that defendant could not have produced the pregnancy  only that it was "highly improbable". The ultimate holding there was that the husband failed to rebut the presumption of paternity. New Jersey's rule of "clear and convincing" evidence was the test applied.
In the Indiana case of Whitman v. Whitman, 140 Ind. App. 289, 215 N.E.2d 689 (Ind. App. 1966), the court affirmed the trial court and held that the evidence supported the finding that the husband was the father of the wife's child born during marriage despite evidence that the husband had undergone a vasectomy. In Whitman the operation occurred January 26, 1946; the parties had normal marital relations until 1963, and the child in question was *74 born April 1962. The operating doctor did not testify and the medical testimony did not establish the length of time plaintiff could have been sterile on the basis of sperm analysis performed two weeks before the trial, as a result of which the medical opinion was that plaintiff was presently sterile and was "almost certainly" not the father of the child. In affirming paternity, the court held that
* * * considering the evidence most favorable to appellee; the strong presumption of the legitimacy of a chlid born in wedlock; the fact that appellant admittedly was having normal marital sexual relations with the appellee at the time of conception; and the failure of proof to show that anyone else had such access; and the lack of the evidence to directly, clearly, and convincingly establish the sterility of appellant at the time of conception, we conclude that the decision of the trial court is sustained by sufficient evidence and is not contrary to law.
Again the "clear and convincing" test was applied.
In Tosh v. Tosh, 214 Cal. App.2d, 483, 29 Cal. Rptr. 613, 46 A.L.R.3d 175 (D. Ct. App. 1963) the parties were married in July 1958, the vasectomy occurred in October 1958, the separation occurred March 19, 1960, but the marital relations continued until April 24, 1960 and the child whose paternity was at issue was born November 13, 1960. The wife denied sexual relations with anyone but the husband and there was no evidence of wife's affection for, propinquity to, or acquaintance with any other man. Tests were made in November 1958, June 1960 and July 1960 that showed an absence of live sperm, but the November test was too soon after the operation to be conclusive. The appellate court held the doctor's opinion of sterility is not entitled to conclusive effect in view of the substantive evidence sustaining an implied finding of the trial court that the husband was not sterile, which evidence consisted of the wife's testimony of no relations with any other men and lack of proof of any other men although the defendant lived next door after the separation.
*75 Cochran v. Cochran, 2 Wash. App. 514, 468 P.2d 729 (App. Ct. 1970), is a case which was remanded by the appellate court for additional findings of fact, and hence is not conclusive as to the end result. Moreover, the facts differ in material parts from the present case. The vasectomy was performed August 10, 1966 and the husband was tested five times from November 1966 to August 1968, with each test negative. A child was conceived in September 1967 while the parties lived together. The medical testimony was that the chance of the husband being able to impregnate during the critical period was "to a reasonable medical certainty, nil". There was some inference of misconduct by the wife. The trial court had found the husband to be the father.
The matter will be listed for further hearing on the issue of the amount of support.