J. H., PLAINTIFF, v. M. H., DEFENDANT.

Superior Court of New Jersey
Chancery Division Mercer County

Decided November 26, 1980.

*Barbara Ulrichsen* for plaintiff (*Mason, Griffin & Pierson,* attorneys).

*Howard L. Felsenfeld* for defendant (*Brotman, Felsenfeld & Barson,* attorneys).

*Edward Hunter,* guardian ad litem.

TAMS, J. S. C.

This divorce action presents the question whether the result of HLA (Human Leukocyte Antigen) blood and tissue testing may be received in evidence on the issue of disputed paternity. Plaintiff wife in the present case first alleged in her complaint that the child born to her during marriage to defendant was his

child; defendant admitted this in his answer. By amended complaint plaintiff later stated that this child was in fact fathered by a third person, not defendant. On motion, plaintiff seeks to have this court order defendant to submit to HLA blood and tissue testing to determine whether he is the father. Plaintiff has submitted the results of HLA testing on herself and the man she claims to be the father; the test report states that this is a 98.7% probability.

Defendant resists being tested on two essential grounds. The first is that the child is presumed to be his, having been born to his wife, the plaintiff, during coverture. Secondly, that *N.J.S.A.* 2A:83-3 precludes HLA test results from being received as evidence.

Addressing the first ground, there has been since early common-law "an exceedingly sturdy presumption" of the legitimacy of every child born in wedlock, *In re Rogers*, 30 *N.J.Super.* 479, 485 (App.Div.1954), *certif.* denied 16 *N.J.* 193 (1954). This presumption is rebuttable, *B. v. O.*, 50 *N.J.* 93, 97 (1967). "A tendency toward a modification of the burden of the refutory proof to fit the, shall we say, idiosyncrasies of modern life is perceptible. Such is the life of the law." *In re Rodgers, supra,* 30 *N.J.Super.* at 485 (Jayne, J.A.D.) Clear and convincing evidence is now the burden, *Sarte v. Piduto*, 129 *N.J.Super.* 405, 412 (App.Div.1974), and thus the burden of plaintiff in this case.

Plaintiff seeks to place in her proofs the HLA test results, including HLA testing on defendant which she asks this court to order. There is a statute which addresses this situation, *N.J. S.A.* 2A:83-3 provides:

"Whenever it shall be relevant in a civil action to determine the parentage or the identity of any child or other person, the court, by order, may direct that any party to the action and the person whose parentage or identity is involved submit to one or more blood grouping tests, to be made by duly qualified physicians under such restrictions and directions as the court shall deem proper. Whenever such test is ordered and made, the testimony of the experts to the results thereof, subject to cross-examination as in section 2A:83-2 of this title, shall be receivable in evidence, but only in cases where definite exclusion is indicated. The order for such blood grouping tests also may direct that the

testimony of such experts and of the persons so to be examined be taken by deposition. The court shall determine how and by whom the costs of such examinations shall be paid."

If this court were to determine that evidence from HLA testing is not a "definite exclusion" under *N.J.S.A.* 2A:83–3, it would appear that plaintiff would be precluded from introducing such evidence to show that the third party is the father of her child. However, more than the language of the cited statute should be considered in making this determination, and most particularly, the fact that new and more sophisticated scientific testing procedures have been perfected since the time of the passage of the foregoing legislation in 1939. HLA blood and tissue typing has been recognized as such a procedure for proving paternity, and appears to be a valuable tool for the parties and the court in such cases, *Malvasi v. Malvasi,* 167 *N.J.Super.* 513, 515 (Ch.Div. 1979).

Consideration must also be given to this court's abiding concern with the best interest of the child concerned. Can it be said that an evidential interpretation which might prevent a child from ever knowing its natural parent is consistent with this judicial philosophy? It would seem in logic to be profoundly important for a child to have that right. As stated by Judge Botter in an adoption proceeding,

One would expect that a child has a natural yearning to know his true parentage. Every child has the need to feel rooted, to find himself, and to know his true origins. When such knowledge is denied the child may resort to fantasy to fill the void. As the links to his past disappear with time, the search for his identity will become more difficult. The anxiety to learn what was in his past may be pathological, making it more difficult for the child to lead a useful life and to form meaningful relationships. *In re Adoption by K,* 92 *N.J.Super.* 204, 208 (Cty.Ct.1966).

The last cited case held that the issue of paternity should be "resolved early in the life of the child" (p. 209). It would be equally important in the present case, where plaintiff and the man she alleges to be the father of her child have already

revealed the HLA test results in which they participated.[1] While this court has sealed the present proceedings, if parents in a similar situation so choose, they might publicly proclaim these results, thereby effectively destroying the long cherished presumption of legitimacy earlier reviewed.

A Wisconsin court considered an almost identical problem arising from similar statutory conflict and stated.

> The HLA tests will, in the course of time, become the most powerful tool for the determination of paternity or non-paternity. In fact, the probability of exclusion by HLA, will be greater than the cumulative probability of all the other systems. Science has progressed to a point where ultimately in virtually every case where the accused is innocent, there will be an exclusion. *And a man not excluded after complete testing will undoubtedly be the actual father of the child.* See *J. B. v. A. F.*, 92 *Wis.*2d 696, 285 *N.W.*2d 880, 883 (Wis.App.1979).

Notwithstanding the foregoing quotation, the Wisconsin court held that HLA testing was inadmissible because an existing statute only permitted test results in evidence "where a definite exclusion is established" (285 *N.W.*2d at p. 881).

Another jurisdiction, the State of California, has considered this problem and reached a different result. In *Cramer v. Morrison*, 88 *Cal.App.*3d 873, 153 *Cal.Rptr.* 865 (Dist.Ct.App. 1979), the court reviewed a decision of the trial court which excluded HLA test results because of an existing statute which permitted blood tests only if they could serve as conclusive evidence of an alleged father's non-paternity. The California court rejected the contention that the legislature, by adopting this statute, thereby intended to preclude the use in evidence of such tests as HLA to establish paternity, holding that the statute referred only to the earlier Landsteiner series of red cell blood grouping tests enjoying currency at the adoption of the California statute in 1953. Such was the situation when the New Jersey statute 2A:83–3 was adopted. The blood test then

---

[1] The guardian ad litem appointed to represent the interest of the child in the instant case observed in his report, "The infant child born during the marriage had no hand in creating the problems in this case. He ought to be able to emerge from it knowing his true father, with the assistance of the Court and science."

current was only able to disprove paternity and thus was the basis for inclusion of the statutory language, "shall be receivable in evidence, but only in cases where definite exclusion is indicated." See *Cortese v. Cortese*, 10 *N.J.Super.* 152 (App.Div. 1950) (opinion by then Judge—now Justice—Brennan) and *Ross v. Marx*, 24 *N.J.Super.* 25 (App.Div.1952).

The decision of the California court may be used by this court for guidance in interpretation, *Burg v. State*, 147 *N.J.Super.* 316, 322 (App.Div.1977), certif. denied, 75 *N.J.* 11 (1977). Recognizing that *N.J.S.A.* 2A:83–3 made existing scientific blood testing available as an aid to evidential proof in paternity actions, it would be anomalous to conclude that the legislature thereby intended to limit litigants and the courts of this state from the benefits of future scientific tests developed after the passage of that act in 1939. "It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to a result incompatible with the legislative design." *New Capitol Bar & Grill Corp. v. Div. of Employment Sec.*, 25 *N.J.* 155, 160 (1957). In construing statutes every effort should be exerted to avoid an anomalous result, *Union Co. Bd. of Freeholders v. Union Co. Park Com.*, 41 *N.J.* 333, 341 (1964); *State v. Gill*, 47 *N.J.* 441, 444 (1966).

Accordingly, this court determines that *N.J.S.A.* 2A:83–3 does not preclude HLA testing nor the use of such test results in evidence in a disputed paternity case. The HLA testing requested to be done on defendant shall be ordered, to be paid for by plaintiff. Before such test results are admissible, plaintiff must demonstrate to this court that the equipment or methodology used has a high degree of scientific reliability and was performed or administered by qualified persons, *State v. Chatman*, 156 *N.J.Super.* 35, 38 (App.Div.1978), certif. denied, 79 *N.J.* 467 (1978).

Plaintiff's attorney shall submit an order.